IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NEIL HORLICK,

    *Plaintiff,*

    v.

CAPITAL WOMEN'S CARE, LLC, et al,

    *Defendants.*

Civil Action No.: ELH-11-01716

## MEMORANDUM OPINION

In this diversity case, plaintiff Neil Horlick, M.D., has sued defendant Capital Women's Care, LLC ('CWC'), and three individual members of CWC:  Doctors Mitesh Kothari, David Solberg and Andrew Oh.  Plaintiff's claims arise from his claim that defendants entered into a binding employment agreement with him.  Complaint (ECF 1) ¶¶ 1-7.  In particular, plaintiff has sued defendants claiming a violation of the Maryland Wage Payment and Collection Law (Count I), *id.* ¶¶ 32-38; for breach of contract (Count II), *id.* ¶¶ 39-41; and for promissory estoppel (Count III), *id.* ¶¶ 42-49.

Defendants have filed a 'Motion To Dismiss' ('Motion,' ECF 6), pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with a 'Memorandum In Support Of Defendants' Motion To Dismiss' ('Motion Memo,' ECF 6-1).[1]  Plaintiff opposes the Motion. *See* 'Memorandum In Opposition To Motion To Dismiss' ('Opposition,' ECF 8).  In reply to plaintiff's Opposition, defendants filed 'Defendants' Reply To Plaintiff's Opposition To Defendants'

---

[1] Defendants appended two exhibits to their Motion.  The first ('Exhibit A,' ECF 6-2) is a copy of the 'Physician Employment Agreement' signed by plaintiff (the 'Agreement').  The second ('Exhibit B,' ECF 6-3) is the signed affidavit of Faye Yommer, defendants' office manager, certifying, as custodian of records for CWC, the authenticity of Exhibit A.

Motion To Dismiss" ("Reply," ECF 9).  As the motion has been fully briefed, the Court rules now pursuant to Local Rule 105.6, no hearing being necessary.

### Factual and Procedural Background[2]

Plaintiff is a physician.  Complaint ¶ 10.  CWC, a Maryland limited liability company, is a medical practice in Hagerstown, Maryland.  *Id.* ¶¶ 2, 9.  The three individual defendants are physicians and members of the LLC.  *Id.* ¶ 9.  Around January 2011, plaintiff met with defendants about joining their practice.  *Id.* ¶ 11.  Plaintiff alleges that, on or about February 14, 2011, Dr. Kothari called plaintiff and told him that the defendants had made the decision to hire plaintiff.  *Id.* ¶ 12.  According to plaintiff, he "accepted the job," and Dr. Kothari responded that the defendants "would send him a contract," which plaintiff should sign and return.  *Id.*

On February 16, 2011, Dr. Solberg sent plaintiff an email that said: "Neil, Please let me welcome you to the practice.  We are excited to have you as part of our little family.  I hope you enjoy a personally and professionally satisfying career with us." *Id.* ¶ 13.  On February 23, 2011, defendants' office manager, Faye Yommer, sent plaintiff the employment contract (the "Agreement") via an email that stated: "Dr. Horlick, I have attached the official employment contract.  Please review, print, sign and return both copies to me.  Your start date continues to be undefined, but appears to be in the vicinity of May, subtract or add a month." *Id.* ¶ 14.  Plaintiff signed and returned the undated Agreement to defendants.  *Id.* ¶ 15.  The Agreement states, in part:

This PHYSICIAN EMPLOYMENT AGREEMENT ("Agreement") is entered into this __ day of _____, 2011, by and between CAPITAL WOMEN'S CARE, LLC ("Company") and

---

[2] The Court construes the facts alleged in the Complaint in the light most favorable to plaintiff, as the party opposing the Motion.  *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Neil Horlick, M.D. ("Physician").   It also states, in Section 4.3: "Company [i.e., CWC] may terminate this Agreement without cause, at any time, by giving Physician ninety (90) days prior written notice or payment of salary for such period in lieu of such notice." (the "Notice Provision").

In March, plaintiff met with defendants and was introduced to office staff as a new physician hired by the practice.[3]  *Id.* ¶ 16.  And, Dr. Solberg invited him to a celebratory dinner to welcome plaintiff to the practice.  *Id.* ¶ 20.

Also in March 2011, Dr. Kothari told plaintiff to form an LLC with "Legal Zoom, LLC," an online legal service.  *Id.* ¶ 17.   Dr. Kothari explained that, if plaintiff had an Employer Identification Number ("EIN"), it would be easier for him to get paid by CWC, without "having to wait for credentialing from insurance companies which could take up to 6-9 months."  *Id.* Accordingly, plaintiff formed "Horlick Locums, LLC."[4]  *Id.*  Also upon Dr. Kothari's suggestion, plaintiff met with a Hagerstown accountant, Julie Caniford, who helped plaintiff file his 2010 personal income tax returns and discussed with him the tax implications of "Horlick Locums, LLC." *Id.*[5]

Plaintiff continued to prepare to join the medical practice.  He discussed the "call schedule" with Dr. Kothari and made arrangements with Dr. Solberg, who was responsible for preparing

---

[3] Plaintiff states that this occurred in "March 2010." Presumably, plaintiff intended to state that this occurred in March 2011.

[4] "Locums" is short for the latin phrase "locum tenens," the literal meaning of which is "placeholder," and which typically refers to a person performing duties temporarily.

[5] Defendants offer an alternative view of these events.  They contend that plaintiff was told that he "was being hired as an independent contractor until he could be credentialed with insurance companies, which could take up to six to nine months." Motion Memo at 2.  They assert that they asked plaintiff to form "Horlick Locums, LLC" and obtain an EIN because he was not a CWC employee.  They observe: "Individuals who are employees do not obtain EINs, but are paid and pay taxes according to their social security numbers." *Id.* at 2 n.1.  Of course, I must construe the facts in the light most favorable to plaintiff, *Philips*, 572 F.3d at 180; defendants' account is included for completeness and because this assertion is critical to the comprehension of defendants' substantive legal arguments, discussed *infra*.

the call schedule, for leave on the Friday and the weekend prior to his Ob/Gyn Board Examination, "in order to allow him time to study." Complaint ¶ 18.  In addition, pursuant to Dr. Kothari's recommendation, plaintiff signed a lease for an apartment in 'Rosewood Village,' a development conveniently located to the physicians' office and the hospital.  *Id.* ¶ 19.  He paid 1.5 months of rent, at a rate of $1200 per month.[6]  *Id*.  Plaintiff also sold his home in Washington, D.C., at a loss of about $10,000.  *Id.* ¶ 25.

Moreover, plaintiff had professional photographs taken of himself, apparently pursuant to defendants' request.  *Id.* ¶ 21.  One of the photos was posted on the CWC website.  *Id*.  Also pursuant to defendants' request, plaintiff attended a three-day training session at the CWC Women's Care Central Business Office in Silver Spring, Maryland, *id.* ¶ 22, to learn how to use the electronic medical record system, "Next Gen."

In March or April 2011, Ms. Yommer, the CWC office manager, called plaintiff and told him that his start date would be May 6, 2011.[7]  *Id.* ¶ 23.  On March 28, 2011, plaintiff emailed Yommer and asked: "Do you have a copy of my signed CWC employment contract you can send me for my records?"  *Id.* ¶ 24.  Yommer replied: "Yes. I have your original.  I am holding on to the contract until we have completed the locums.  Do you want a copy of the unsigned contract or the final contract, signed by Debbie Redd, CEO?"  *Id*.  Plaintiff replied: "I was hoping to get a copy of the final contract signed by Debbie Redd, CEO.  If its [sic] easier for you I can pick up the copy once I start in the office."[8]  *Id*.

---

[6] In his Opposition, at 2, plaintiff asserts that he "paid the security deposit and two months' rent."

[7] Defendants state that "Horlick's start date was set for May 26, 2011," Motion Memo at 2, but this appears to be an error, as they cite to plaintiff's Complaint for that authority, and plaintiff asserts that his start date was May 6, 2011.  *Id.* ¶ 23.

[8] CWC claims plaintiff was informed "[a]t some point" that "it was holding the agreement and would have it signed by Debbie Redd . . . <u>after</u> the *locums tenen* was completed."  Motion

According to plaintiff, "in reliance" on defendants' promises, he "took himself off the job market." *Id.* ¶ 25.  Then, on May 3, 2011, Dr. Oh called plaintiff and told him "the agreement was canceled." *Id.* ¶ 26.  Plaintiff contends that "[d]efendants breached the Agreement by failing to provide plaintiff with either ninety days prior written notice or payment of such period in lieu of such notice," *id.* ¶ 28, and that he sustained damages as a result of that breach.  *Id.* ¶ 31.

In particular, in Count I of the Complaint, plaintiff alleges that defendants violated the Maryland Wage Payment and Collection Law (the "Wage Act").  *Id.* ¶ 35.  *See* MD. CODE (2008) § 3-501 *et seq*. of the Labor and Employment Article ("L.E.").  In this regard, plaintiff claims that defendants were his "employer" within the meaning of that law, and that their failure to comply with the Notice Provision was a failure to pay him wages, in violation of Maryland law. Complaint ¶ 30, 35.  Specifically, relying on the Notice Provision, he claims that defendants failed to pay him for ninety days' salary, in the sum of $56,250, *id.* ¶¶ 29, 33, as well as compensation for the time he spent at the seminar in Silver Spring and in preparing to begin to work for the defendants.  *Id.* ¶ 34.  He also demands treble damages under the statute, as well as reasonable attorney's fees.  *Id.* ¶¶ 36-37.  *See* L.E. § 3-507.1.

Count II alleges breach of the employment contract.  *Id.* ¶ 40.  Plaintiff contends that, in terminating the Agreement without providing him either ninety days' advance notice or ninety days' salary in lieu of notice, defendants breached the Agreement.  *Id.*  Again, he demands ninety days' salary, plus interest.  *Id.* ¶ 41.

In Count III, plaintiff asserts a promissory estoppel claim.  He contends that, in selling his home in Washington, D.C. and moving to Hagerstown, Maryland, and in "[taking] himself off the

---

Memo at 2-3 (emphasis in original).  As noted, a copy of the Agreement is appended as Exhibit A to the Motion Memo.  It is signed by plaintiff, but not by Debbie Redd, although her name is printed under the signature line.  According to plaintiff, at the time he "did not know the Employment Agreement had not been signed by Defendants." Opposition at 2.

job market" as of February 14, 2011, the date when Dr. Kothari offered him a position with CWC, he detrimentally relied on defendants' "clear and definite promise to employ plaintiff." *Id.* ¶¶ 43-45.  He seeks "enforcement of the promise made by Defendants" as well as compensation for the damages he sustained. *Id.* ¶¶ 47, 49.

In total, plaintiff demands damages of "$266,000, or such other amount as is determined by a jury, consisting of unpaid wages, treble liquidated damages, the loss on the sale of [his] home, the costs of moving to and from Hagerstown, payments made to lease the Hagerstown apartment, interest, costs, attorney's fees, an amount equal to the tax on any award, and such other relief as the Court deems just and fair." *Id.* at 7.

## Discussion

As noted, defendants have moved to dismiss the case pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Under FED. R. CIV. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted).  To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2).  *Id.* at 555.  But, the Rule demands more than bald accusations or mere speculation.   *Id.*   To satisfy the minimal

requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556.   A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule.   *Id.* at 555.

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6).   *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008).   Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . ." (citation omitted)); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

However, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts.   *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010).   Moreover, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted).   But, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

In considering a Rule 12(b)(6) dismissal, the court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448; *MCS Services, Inc. v. Jones*, No. WMN-10-1042, 2010 WL 3895380, at *1 n. 3 (D. Md. Oct. 1, 2010); *Benfield Elec. Co., Inc. v. Keybank*, No. 1:09-cv-2071, 2009 WL 5206626, at *2 (D. Md. Dec. 23, 2009).   In the case at bar, then, I may consider the Agreement, because it was attached to the Motion, is relied upon in plaintiff's Complaint, and its authenticity is not in dispute.

Defendants have also moved to dismiss under FED. R. CIV. P. 12(b)(1), claiming lack of subject matter jurisdiction. "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006).   FED. R. CIV. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.   *See Khoury v. Meserve,* 628 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd,* 85 Fed. App'x  960 (4th Cir. 2004). "[A] motion to dismiss under Rule 12(b)(1) is nonwaivable and may be brought at any time-even on appeal-regardless of whether a litigant raised the issue in an initial pleading." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 548 (4th Cir. 2006); *see* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Once a challenge is made to subject matter jurisdiction, the plaintiff bears the burden of proving that the Court has subject matter jurisdiction.   *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir.1999); *see also Ferdinand–Davenport,* 742 F. Supp. 2d at 777; *Khoury,* 268 F. Supp. 2d at 606.   In ruling on a motion under FED. R. CIV. P.

12(b)(1), the court "should 'regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Ferdinand–Davenport,* 742 F. Supp. 2d at 777 (quoting *Evans,* 166 F.3d at 647); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991), *cert. denied,* 503 U.S. 984 (1992). The court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans,* 166 F.3d at 647.

*Count I: The Wage Act*

## A.

Before addressing plaintiff's Wage Act claim, it is helpful to review the applicable Maryland statute.

Maryland's Wage Act protects terminated employees from employers who wrongfully withhold payment of wages. *Stevenson v. Branch Banking and Trust Corporation, t/a BB&T,* 159 Md. App. 620, 635, 861 A.2d 735, 743 (2004). "The principal purpose of the Act '[is] to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages." *Medex v. McCabe*, 372 Md. 28, 39 (2002). The subtitle does not focus on "the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 373 Md. 501, 513 (2003). L.E. § 3-505, governing payment upon termination of employment, provides:

> Each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.

Under the Wage Act, if an employer fails to pay an employee wages on termination of employment, "after two weeks have elapsed from the date on which the employer is required to

have paid the wages, the employee may bring an action against the employer to recover the unpaid wages." L.E. § 3-507.1(a); *see Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 382-83, 780 A.2d. 303, 312-13 (2001). If "a court finds that an employer withheld the wages of an employee in violation of [the Wage Act] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." L.E. § 3-507.1(b).

An "employer" within the purview of the Wage Act is "any person who employs an individual in the State or a successor of the person." L.E. § 3-501(b). However, a "mere supervisor" is not an employer within the meaning of the Wage Act. *Watkins v. Brown*, 173 F. Supp. 2d 409, 415-16 (D.Md. 2001). *See also Hosack v. Utopian Wireless Corp.*, Civ. No. DKC-11-420, 2011 WL 1743297, *5 (D. Md. May 6, 2011).

Notably, the Wage Act does not define "employee." But, in *Ayd*, the Maryland Court of Appeals made clear that the Wage Act's provisions extend to executive and professional employees. 365 Md. at 384-85, 780 A.2d at 314. The Court stated: "Thus, if the General Assembly had intended to exclude administrative, executive and professional employees from the provisions of §§ 3-505 and 3-507.1, or otherwise limit the application of these provisions to that class of employees, it would have expressly done so.[1] *Id.* at 385, 780 A.2d at 314. The court reasoned that the use of the word "employee" in the statute was meant to distinguish between independent contractors and servants of the employer. *Id.* at 387, 780 A.2d at 315.

An "employee" within the purview of the Wage Act is one who would be considered an agent or employee, as opposed to an independent contractor, at common law. *Id.* In considering whether an individual is an "employee" within the meaning of the Wage Act, several factors are relevant, including the following:

1. Whether the employer actually exercised or had the right to exercise control over the performance of the individual's work;
2. Whether the individual's service is either outside all the usual course of business of the enterprise for which such service is performed;
3. Whether the individual is customarily engaged in an independently established trade, occupation, profession, or business;
4. Whether it is the employer or the employee who supplies the instrumentalities, tools, and location for the work to be performed;
5. Whether the individual receives wages directly from the employer or from a third party for work performed on the employer's behalf; and
6. Whether the individual held an ownership interest in the business such that the individual had the ability and discretion to affect the general policies and procedures of the business.

*Id.* at 392, 780 A.2d at 318-19;[9] *accord Dunn v. Eastern Petroleum*, No. JKB 09-2851, 2011 WL 310400, at *5-6 (D. Md. Jan. 26, 2011).

Under the Wage Act, the definition of "wage" is very broad. "Wages" are defined as "all compensation that is due to an employee for employment," including bonuses, commissions, fringe benefits, and "any other remuneration promised for service." L.E. § 3-501(c). Notably, "[i]t is the exchange of remuneration for the employee's work that is crucial to the determination that compensation constitutes a wage." *Provident Bank of Maryland v. McCarthy*, 383 F. Supp. 2d 858, 860 (D. Md. 2005). Put another way, in order to be considered "wages," the subject payment must be due for work the employee actually performed. *See, e.g., McCarthy,* 383 F. Supp. 2d at 861 (holding that an imputed interest payment sought by a former employee was a "wage" within the meaning of the Wage Act, because "[plaintiffs] entitlement to the Imputed Interest payment was conditioned solely upon his performance."); *Stevenson*, 159 Md. App. at 646-47, 861 A.2d at 750 (holding that severance pay only constitutes "wages" within the meaning of the Wage Act

---

[9] After consideration of these factors, the Maryland Court of Appeals concluded that the trial court erred by failing to submit to the jury the issue of whether Mr. Ayd, the President and Treasurer of the company, was an employee under the Wage Act, so as to qualify for the benefits of the statute. *Id.* at 395, 780 A.2d at 320.

when it represents payment for work an employee performed prior to the termination of employment).

Even if an employer is found liable for wages, the employer is not liable for statutory treble damages, attorneys' fees, or costs under the Wage Act, if there is a bona fide dispute about the payment.  *Ayd*, 365 Md. at 396, 780 A.2d at 320; L.E. § 3-507.1.  The "existence of a bona fide dispute under § 3-507.1 is a question of fact left for resolution by the jury, not the trial judge." *Ayd*, 365 Md. at 396, 780 A.2d at 320-21.[10]  As the *Ayd* Court explained, 365 Md. at 396-97, 780 A.2d at 321, "[a] finding by the jury that a bona fide dispute existed at the time of termination of employment ends any inquiry as to whether the employee would be entitled to receive additional damages according to the provisions of [L.E.] § 3-507.1."

## B.

Defendants claim that plaintiff was not an employee within the meaning of the Wage Act; rather, he was an independent contractor.  According to defendants, "it is undisputed that Horlick was being retained initially by CWC to provide services as a *locum tenens* (which is a form of an independent contractor) and not as an employee." Motion Memo at 5.[11]  They assert that "whether the individual receives wages regularly and/or directly from the employer" is a factor in distinguishing employees from independent contractors, and that "[f]or many months, it could have been Horlick's LLC, and not him personally, which was to be paid by CWC for any medical services provided to patients." *Id.*  Defendants also contend that, even if plaintiff's "start date" represented the beginning of his employment with CWC, the Agreement was cancelled prior to

---

[10] In *Admiral Mortgage v. Cooper,* 357 Md. 533, 543, 745 A.2d 1026, 1031 (2000), the Court elucidated the definition of a "bona fide dispute."

[11] Defendants concede that plaintiff's LLC may have a claim for damages for work that plaintiff performed as a locum tenens, i.e. the training in Silver Spring, but note that "those claims are not covered by the Complaint." Reply at 2.

that date, and therefore plaintiff's period of employment, "even under the facts as alleged by Plaintiff . . . never commenced." Reply at 2.

The individual defendants also maintain that they were not employers within the meaning of the Wage Act, pointing out that none of them was a party to the Agreement.  Motion Memo at 6.  Further, they observe that, under Maryland law, members of a limited liability company are not "personally liable for the obligations of the limited liability company, whether those obligations arise in contract, tort or otherwise, solely by being a member." *Id.* (quoting Md. Code (2007), Corps. & Assocs., § 4A-301).  The individual defendants contend that their actions were not independent, but were rather all taken on behalf of CWC.  Motion Memo at 7.  They also note that the definition of "employer" does not encompass supervisors, "even where that individual may be responsible for the overall operation of the company, including setting of salary and termination of the employee." *Id.* at 6.

Finally, defendants argue that the damages sought by plaintiff are not wages within the meaning of the Wage Act.  In their view, the Wage Act "does not extend to purely contractual benefits that are not dependent on an employee's performance, like a notice provision." *Id.* at 8.

Plaintiff vigorously contests defendants' assertions.  Asserting that it is "fiction" to call him an independent contractor, Dr. Horlick posits: "The Complaint, together with the Employment Agreement, does not contain the words 'independent contractor,' nor do they make any provisions for such a designation.  Clearly, this is because Plaintiff was an employee." Opposition at 3.  Further, Dr. Horlick contends that the individual defendants were employers within the meaning of the Wage Act.  He states: ". . . Defendants hired Plaintiff, determined where Plaintiff should report for duty, determined how Plaintiff would be paid, decided when he should work, gave him

an office, and ultimately fired him.  He was an employee and Defendants were his employers."
*Id.* at 5.

In addition, plaintiff contends that the 90 days' salary he desires to recover under the Agreement constitutes wages within the meaning of the Wage Act.  Noting that the Wage Act "defines 'wage' broadly and specifically identifies a non-exclusive list of compensation categories," *id*. at 7, he believes compensation in lieu of a notice period should be included on that list.  In support of this argument, plaintiff insists that he "relied on the notice provisions in the Employment Agreement. . . . As such, Plaintiff was entitled to a notice period, as an employee under the Employment Agreement, and to the wages included therein." *Id*. at 8.  Plaintiff cites *McCarthy,* 383 F. Supp. 2d at 860, for the following proposition: "Once a bonus, commission or fringe benefit has been promised as part of compensation for service, the employee is entitled to enforce the payment as wages."

## C.

In my view, even assuming that plaintiff qualified as an employee upon signing the Agreement, the compensation plaintiff seeks is not for a "wage" within the purview of the Wage Act.  That determination is dispositive of plaintiff's Wage Act claim.[12]

As discussed, *supra,* plaintiff relies on the Notice Provision of the Agreement to support his wage claim.  The parties recognize that the Maryland courts have not specifically ruled on whether compensation in lieu of compliance with a contractual notice of termination provision constitutes wages under the Wage Act.  Motion Memo at 8; Opposition at 7-8.  *McClure v.*

---

[12] Consequently, the more fact-intensive inquiries of whether plaintiff was an employee or an independent contractor, and whether the individual defendants were employers or "mere supervisors," need not be resolved.  Nevertheless, under Maryland law, members of a limited liability company generally are not personally liable for the limited liability company's obligations.

*International Livestock Improvement Services Corp.*, 369 N.W.2d 801 (Iowa 1985), a case arising under Iowa's wage law, which is similar, in relevant part, to Maryland's Wage Act, provides guidance.

In *McClure,* plaintiff claimed that, pursuant to his employment contract, his employer was obligated to pay him 30 days' salary in lieu of 30 days' notice of his termination.  In holding that the payment of salary in lieu of notice did not constitute wages under the law, the court stated that the sum at issue was "not for services 'rendered' but for damages." *Id.* at 804.  In distinguishing that sum from severance payments, the court stated:

> A severance payment is an amount which is granted at contract termination on account of past services, and is usually calculated on the basis of the length of those services. . . . In the present case a typical severance pay clause would have operated thus: the employer would give the thirty-day notice, the employee would work the thirty days, and at the end of that period the employee would receive his wages for the thirty days plus a lump sum calculated under the severance pay clause on the basis of years of service.  We do not have a severance pay clause in the present contract.  We have a notice of termination clause.  The result is that [plaintiff] does not have a Wage Law claim.

*Id.* at 805.  *See also Van Arkel v. Warren County*, 365 F. Supp. 2d 979, 1013-14 (S.D. Iowa 2005) (granting summary judgment to defendant on plaintiff's claim for salary in lieu of notice because the court found that plaintiff had "received *all* wages for *all services rendered,* which is all [the Wage Law] guarantees.") (emphasis in original).

The Maryland statute makes clear that wages are "remuneration promised for service." L.E. § 3-501(c).  The Maryland Court of Special Appeals has held that severance pay constitutes wages within the meaning of the Wage Act when it represents payment for work an employee performed prior to the termination of employment.  *Stevenson*, 159 Md. App. at 646-47, 861 A.2d at 750.  But, the appellate court also clearly stated that severance pay amounts to wages only to the extent that it "represents deferred compensation for work performed during the

employment." *Id.* at 644, 861 A.2d at 749.  In order to constitute wages, then, a sum must be due in exchange for some work actually performed by the employee.[13]

Plaintiff relies on *McCarthy, supra,* 383 F.Supp. 2d at 860, for the proposition that "[o]nce a bonus, commission or fringe benefit has been promised as part of compensation for service, the employee is entitled to enforce the payment as wages." He suggests that the Notice Provision is akin to a benefit under the Wage Act.  Plaintiff misapprehends *McCarthy,* however.

In that case, the plaintiff had entered into an employment agreement with the defendant, which stipulated that, in the event that defendant terminated plaintiff without cause, plaintiff would be entitled to receive an Imputed Interest payment of $4,846,050.  *Id.* at 859-60.  Plaintiff asserted that after he was terminated without cause, the defendant refused his demand for the Imputed Interest payment, allegedly in violation of the Wage Act.  *Id.* at 860.   In denying defendant's motion to dismiss, the court stated:

> McCarthy's entitlement to the Imputed Interest payment was conditioned solely upon his performance.  McCarthy alleges that 'at all times during his employment, he acted in good faith and with the reasonable belief that all his actions were taken in the best interest of Provident and the leasing company.'  An employee's right to compensation vests when the employee does everything required to earn the wages.

*Id.* at 861 (citation omitted).

Clearly, the *McCarthy* Court did not suggest that an employee would be entitled to enforce the promise without having performed the requisite service.  Rather, the case is more appropriately cited for the following proposition: "It is the exchange of remuneration for the

---

[13] In *Dellinger v. Science Applications International Corp.,* 649 F.3d 226 (4th Cir. 2011), the Fourth Circuit recently said that prospective employees are not protected by the federal Fair Labor Standards Act, because to extend the Act's protections to "an applicant who never began or performed any work" would "broaden the scope [of that Act] beyond its explicit purpose of fixing minimum wages and maximum hours." *Id.* at 229-30.

employee's work that is crucial to the determination that compensation constitutes a wage." *Id.* at 860.

Other cases are consistent with *McCarthy*.  *See, e.g., Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 783 A.2d 667 (2001) (holding that profit-sharing promised to plaintiff if he remained with employer for a certain period of time did not qualify as a wage within the meaning of the Wage Act, because plaintiff had not earned the bonus before his termination); *Medex*, 372 Md. at 37, 811 A.2d at 302 (holding that incentive fees promised to plaintiff qualified as wages within the meaning of the Wage Act because plaintiff had "performed all the work necessary to earn the fees").

In sum, even if payment in lieu of notice may be compensable as wages, this would not dispense with the requirement for the performance of work in exchange for such a payment. Plaintiff concedes that he was told "the agreement was cancelled" before his pre-arranged start date.  Thus, plaintiff never performed any work for defendants.  Assuming, *arguendo*, that the training that plaintiff attended in Silver Spring constitutes work plaintiff performed for CWC, plaintiff has not alleged that he was to be compensated for attending the training, and plaintiff concedes that the training occurred prior to the anticipated commencement of his employment with CWC.  Therefore, the compensation plaintiff seeks pursuant to the Agreement, equal to ninety days' salary, does not constitute wages under the Wage Act.

Accordingly, with respect to Count I, the Wage Act claim, I shall grant defendants' motion to dismiss.

### Count II: Breach of Contract

With respect to Count II, the breach of contract claim, the individual defendants contend that they are not liable under the Agreement, as they were not parties to it.  Motion Memo at 9.

Moreover, they claim that, under Maryland law, a member of a limited liability company is not "personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company." *Id.* (quoting Md. Code (2007), § 4A-301 of the Corporations and Associations Article).

Further, defendants claim that plaintiff cannot sustain a claim for breach of contract because the Agreement that plaintiff seeks to enforce "never became effective." Motion Memo at 10. Citing Section 4.1 of the Agreement, which states, "This Agreement shall commence on the Effective Date set forth in Section 1.1," defendants observe that Section 1.1 does not specify an effective date.[14]   *Id.*; *id.,* Exh. A.   Although defendants continue to assert that plaintiff's "employment with CWC under the Employment Agreement was not contemplated to begin for another six to nine months,"[15] *id.* at 10 n. 5, they point out that, even assuming, *arguendo*, that plaintiff's start date was May 6, 2011, plaintiff concedes that he was told three days earlier, on May 3, 2011, that "CWC was not moving forward with the agreement." *Id.* at 10. Thus, they conclude: "[B]ecause Plaintiff's employment under the Employment Agreement had not yet commenced when CWC informed Plaintiff that 'the agreement was cancelled,' the provisions contained in the Agreement ̶including the 90 day notice or salary provision ̶never took effect. Accordingly, there is no basis for Plaintiff to seek damages under the Employment Agreement against any of the Defendants for failure to give notice." *Id.* (internal citation omitted).

---

[14] Specifically, Section 1.1 of defendants' Exhibit A states:

<u>Engagement of Physician</u>.   Company hereby engages Physician to practice medicine at the Practice Site on Company's behalf as an employee, beginning on _____ 1, 2011 ("Effective Date"), on terms set forth in this Agreement and as further reasonably requested by Company. . . .

[15] To reiterate, defendants assert that plaintiff's initial work for CWC was to be completed as an independent contractor, rather than as an employee under the Agreement.   Motion Memo at 2, 5.

As indicated, plaintiff insists that defendants breached the Agreement by terminating it without providing plaintiff either ninety days' advance notice or ninety days' salary in lieu of notice.  Complaint ¶ 40.  Further, plaintiff disputes the contention that the individual defendants are not liable under the Agreement because they were not parties to it, and because they are shielded as members of a limited liability company.  Opposition at 5.  He maintains that the individual defendants are liable because they "[held] themselves out as employers" and "held Plaintiff out as their new employee, going so far as to include him on their website." *Id.* at 6.

Although Dr. Horlick suggests that "Maryland is no stranger to the theories behind piercing the corporate veil," he does not set forth any facts or arguments in support of piercing the corporate veil.  *Id.*  Rather, he claims that "such determinations are reserved for after discovery." *Id.*  Moreover, plaintiff does not address defendants' assertion that the Agreement "never became effective" because it was canceled prior to what plaintiff asserts was the effective date.  Rather, plaintiff focuses on the argument that the Agreement is binding even though it was never signed by Ms. Redd or another representative of CWC.  *Id.*  He emphasizes that he "was operating under the wholly reasonable assumption that both parties had signed the Employment Agreement," and recounts all the actions he took in reliance on his anticipated employment with CWC.  *Id.* at 5-6.

In essence, plaintiff argues that the Agreement was valid although it was never signed.  But, defendants do not contend that the Agreement was invalid.  They simply argue that, because the Agreement was cancelled before plaintiff began his performance under the terms of the Agreement, the Notice Provision was not triggered and thus they are not liable for any monetary payment to plaintiff.

Section 6.3 of the Agreement, titled "Governing Law," states: "This Agreement shall be construed pursuant to the laws of the commonwealth [sic] of Maryland." Motion Memo, Exh. A.

The parties do not dispute that Maryland law applies to the breach of contract claim.  Therefore, I will apply the substantive law of Maryland to the breach of contract claim, including Maryland's law regarding contract construction, to the extent it does not differ from federal law.  *See Reese v. Alea London Ltd.*, 332 Fed. Appx. 135, 138-39 (4th Cir. 2009) (applying state law of contract construction to the subject insurance policy pursuant to the rule articulated in *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938)); *Catalina Enterprises, Inc. Pension Trust v. Hartford Fire Ins. Co.*, 67 F.3d 63, 65 (4th Cir. 1995) (same).

As a fundamental principle of contract construction in Maryland, the court must ascertain and effectuate the intention of the contracting parties.  *Society of Am. Foresters v. Renewable Natural Resources Found.*, 114 Md. App. 224, 234, 689 A.2d 662, 666 (1997); *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 290-91, 674 A.2d 106, 142 (1996), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).  "[T]he primary source for determining the intention of the parties is the language of the contract itself." *Hartford Accident & Indem.*, 109 Md. App. at 290-91, 674 A.2d at 142.  In this regard, contracts are interpreted "as a whole to determine the parties' intentions." *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508, 667 A.2d 617, 619 (1995).  Moreover, the terms of the agreement are construed consistent with their usual and ordinary meaning, unless it is apparent that the parties ascribed a special or technical meaning to the words.  *See Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194, 199 (2001); *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766, 556 A.2d 1135, 1138 (1989).

When a contract is clear and unambiguous, "its construction is for the court to determine." *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251, 768 A.2d 620, 630 (2001) (citation omitted).  Moreover, when the provisions of a contract are unambiguous, a court will presume that the parties meant what they stated, without regard to what the parties to the contract

personally thought it meant or intended it to mean.   *Id.* at 251, 768 A.2d at 630; *see also PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029, 1032 (2001); *Jones v. Hubbard*, 356 Md. 513, 533, 740 A.2d 1004, 1015 (1999).   The "test of what is meant is . . . what a reasonable person in the position of the parties would have thought" the contract meant." *Society of Am. Foresters*, 114 Md. App. at 234, 689 A.2d at 667 (citation omitted).

"A contract is ambiguous if 'susceptible of two reasonable interpretations." *Hardwire LLC v. Goodyear Tire & Rubber Co.*, 360 F. Supp. 2d 728, 736 (D. Md. 2005).   *See also Davis v. Magee*, 140 Md. App. 635, 650, 782 A.2d 351, 360 (2001).   "The construction of a contract is a question of fact which, if disputed, is not susceptible of resolution under a motion to dismiss for failure to state a claim." *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972); *accord Tribalco, LLC v. Hue Technology, Inc.*, No. JFM-11-935, 2011 WL 3821074, at *6 n. 1 (D. Md. Aug. 26, 2011). *See also Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 978 F.2d 140, 143 (4th Cir. 1992) (reversing trial court's grant of a motion to dismiss because the contract in issue was "not free of ambiguity"); *Hardwire LLC*, 360 F. Supp. 2d at 736 (holding that "an ambiguous contract provision is a factual determination that precludes dismissal on a motion for failure to state a claim").

In my view, the Agreement is ambiguous in at least one material respect.   It is not clear whether, taken together, Sections 1.1 and 4.1 indicate that the Agreement is altogether unenforceable until the "effective date," or whether that date simply marked plaintiff's "start date" for the provision of his services, but not the effective date of the Agreement.

As indicated, the effective date of the agreement was left blank. *See, supra,* note 14. However, defendants do not challenge the validity of the agreement because that term was left blank.   The Notice Provision in Section 4.3 of the Agreement states that CWC "may terminate this

Agreement, without cause, at any time, by giving Physician ninety (90) days prior written notice or payment of salary for such period in lieu of such notice." Motion Memo, Exh. A.  Defendants contend that the phrase 'at any time' is limited solely to the period after the commencement of performance, thereby implying that they had no duties under the Agreement until May 6, 2011, which was plaintiff's start date.  Their position is contrary to the parties' conduct and plaintiff's contention that the Agreement was valid before his start date, and is at odds with key benefits of employment contracts: to provide certainty; to set the precise terms of employment; and to avoid the unpredictability of traditional at-will employment.

In light of the significant factual dispute as to the effective date of the Agreement and the ambiguity as to this aspect of the Agreement, I decline to dismiss the breach of contract claim as to CWC before the parties have had an opportunity to conduct discovery and clarify their positions.

I will, however, dismiss the breach of contract claim as to the individual defendants.  The Agreement was between plaintiff and CWC.  Under Maryland law, "a person cannot be held liable under a contract to which he was not a party." *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md.App. 294, 316, 728 A.2d 783, 794 (1999).  In my view, the facts as alleged do not amount to a claim that the individual defendants were employers; rather, they merely performed supervisory duties within the scope of their membership in the LLC. "[A] corporation must of necessity act through its agents . . .." *Southern Management Corp. v. Taha,* 378 Md. 461, 480, 836 A.2d 627, 638 (2003) (citation omitted).

Further, under Maryland law, members of limited liability companies are not "personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company." Md. Code

(2007), § 4A-301 of the Corps. & Assocs. Article.  A party may seek to pierce the corporate veil when "necessary to prevent fraud or enforce a paramount equity." *Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 733, 838 A.2d 1204, 1209 (2003) (citations omitted). However, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil." *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 309, 728 A.2d 783, 790-91 (1999).  Indeed, the challenge facing a party seeking to pierce the corporate veil has been described as "herculean." *Dixon v. Process Corp.*, 38 Md. App. 644, 645-46, 382 A.2d 893, 894-95 (1978) (stating that, because "[a] commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving maximum profit with a minimum exposure to liability[…]woe onto the creditor who seeks to rip away the corporate facade").

Notably, plaintiff has not alleged the kind of facts necessary to state a claim for piercing the corporate veil.  For example, he has not alleged that the individual defendants acted fraudulently.  And, "[d]espite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland Courts." *Residential Warranty Corp.*, 126 Md. App. at 307, 728 A.2d at 789; *accord Ramlall v. MobilePro Corp.*, No. 01309, 2011 WL 5108479, at *4 (Md. App. Oct. 28, 2011).  Indeed, "[n]otwithstanding its hint that enforcing a paramount equity might suffice as a reason for piercing the corporate veil, the Court of Appeals to date has not elaborated upon the meaning of this phrase or applied it in any case of which we are aware." *Id.* (quoting *Travel Committee, Inc. v. Pan American World Airways, Inc.,* 91 Md. App. 123, 158, 603 A.2d 1301, 1318 (1992)).  *See also Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 312, 340 A.2d 225, 235 (1975) (finding no paramount equity to justify piercing the corporate veil,

although the individual defendants commingled the equipment of the three subject corporations, operated from a single place of business, made personal loans and transferred insurance policies to themselves, and permitted one corporation to become "all but insolvent" while enriching the other two in order to evade legal obligations asserted in an action against the corporation).

Plaintiff's allegations of liability on the part of the individual defendants are legally insufficient.  I will, however, grant him leave to amend.  As to CWC, however, the breach of contract claim will remain pending.

*Count III: Promissory Estoppel*

In Count III, plaintiff seeks to recover damages based on promissory estoppel.  "[I]n Maryland, promissory estoppel is an alternative means of obtaining contractual relief." *Maryland Transp. Auth. Police Lodge #34 of the Fraternal Order of Police, Inc. v. Maryland Transp. Auth.,* 195 Md. App. 124, 215, 5 A.3d 1174, 1227 (2010),  rev'd on other grounds, *Maryland Transp. Auth. v. Maryland Transp. Auth. Police Lodge #34 of the Fraternal Order of Police, Inc.,* 420 Md. 141, 21 A.3d 1098 (2011).  To prevail on a promissory estoppel claim in Maryland, a plaintiff must prove four elements:

1. a clear and definite promise;
2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
3. which does induce actual and reasonable action or forbearance by the promisee; and
4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 166. 674 A.2d 521, 532 (1996).

Plaintiff asserts, Opposition at 7:

Defendants made Plaintiff a clear and definite promise of employment in their practice.  Plaintiff had a reasonable expectation that he would be employed . . ..  Plaintiff engaged in actual and reasonable actions based on the promised employment, and there was a detriment—Plaintiff's release from the Employment Agreement, or, simply, his unemployment—which can only be resolved by

enforcing the ninety day pre-termination period and providing Plaintiff with restitution.

Defendants urge dismissal of the promissory estoppel claim.  As to the individual defendants, they argue: "Plaintiff again relies on nothing more than their membership in CWC as grounds for their inclusion in this case." Motion Memo at 11.  Notably, CWC does not dispute the merits of plaintiff's promissory estoppel claim.  But, like the individual defendants, CWC challenges whether plaintiff has satisfied the jurisdictional threshold of $75,000 in damages for a diversity case.  Defendants contend that, if the Wage Act claim is dismissed, so as to preclude plaintiff's recovery of treble damages, plaintiff's alleged damages would fall below the jurisdictional threshold of $75,000 in damages under 28 U.S.C. § 1332(a), which governs diversity jurisdiction.

In particular, defendants assert that plaintiff "alleges only $67,879.45 in damages at most, plus moving expenses and a security deposit. . . ." Id. at 11-12.  In computing that sum, defendants calculate the 90 days' salary at $55,479.45,[16] and add to that sum "either 1.5 or 2 months of rent at $1,200 per month or a total of at most $2,400 . . . and a 'loss of about $10,000' on [plaintiff's] district of Columbia home." Id. at 12 n. 7 (internal citations omitted).  Defendants also note that, "in the absence of a statutory or contractual right to attorneys' fees, such fees cannot be included as part of the amount in controversy." Id.

Plaintiff insists that he "has pleaded an adequate jurisdictional amount to a legal certainty." Opposition at 9.  He contends that, in addition to his demand for 90 days' salary and moving expenses, he is also entitled to compensation for damages sustained in stopping his job search when he received the offer from defendants, and for "contributions to the Defendants' practice prior to May 9." Id. at 9-10.

---

[16] Plaintiff asserts that the correct sum is $56,250.  Complaint ¶ 29.

Preliminarily, for the reasons previously articulated, I am satisfied that there is no basis for plaintiff's promissory estoppel claim as to the individual defendants.  As stated, *supra*, "in Maryland, promissory estoppel is an alternative means of obtaining contractual relief." *Maryland Transp. Auth. Police Lodge #34 of the Fraternal Order of Police, Inc.*, 195 Md. App. at 215, 5 A.3d at 1227.  And, under Maryland law, members of limited liability companies are not "personally liable for the obligations of the limited liability company . . . arising in contract . . . solely by reason of being a member of the limited liability company." Md. Code (2007), § 4A-301 of the Corps. & Assocs. Article.  Further, plaintiff has not alleged facts that show that the individual defendants made any "clear and definite promise" to plaintiff in their individual capacities, rather than as members of the LLC.  Rather, plaintiff merely alleges, conclusorily, that "Defendants were holding themselves out as employers" and that they "held Plaintiff out as their new employee, going so far as to include him on their website." Opposition at 6.

To be sure, plaintiff enumerates various actions that the individual defendants took: they interviewed him, called to tell him he had been hired, instructed him to start his own LLC to facilitate payment, arranged his schedule, recommended an apartment complex, sent him to a training session and told him that the Agreement had been cancelled.  *Id.* at 4.  However, "a corporation must of necessity act through its agents . . .." *Taha,* 378 Md. at 480, 836 A.2d at 638 (citation omitted).  None of the allegations as to the individual defendants suggest that they were acting in their individual capacities and not as members of the LLC.  Although plaintiff's allegations of liability on the part of the individual defendants are legally insufficient, I will grant leave to amend.

With respect to CWC's contention as to the jurisdictional amount, subject matter jurisdiction in this case is premised on diversity of citizenship.  The individual defendants all reside in Maryland, and CWC, organized under Maryland law, has its principal place of business in Maryland.  Complaint ¶¶ 2-5.  However, plaintiff resides in the District of Columbia.  *Id.* ¶ 1. The statute governing diversity jurisdiction, 28 U.S.C. ¶ 1332, states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. ¶ 1332(a)(1).

Notably, "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).  "Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).  Furthermore, "if some event subsequent to the complaint reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case." *Id.*  In making such a determination, factors to be considered include "convenience and fairness to both parties, . . . the interests of judicial economy[,] . . . whether the amount claimed in the complaint was made in good faith, or whether plaintiff was consciously relying on flimsy grounds to get into federal court[,] . . . the existence of any state limitations bars to refiling in state court[,] . . . the amount of time and energy that has already been expended[,] . . . and other considerations [that] may arise on a case-by-case basis, such as the existence of some significant

issue of state law best resolved in state court, that could inform the trial court's determination whether to keep or dismiss the case entirely." *Id.*

In my view, it does not appear, to a legal certainty, that plaintiff's claim is for less than the jurisdictional amount.   The 90 days' salary, in the sum of $56,250[17]; the rent expended in Hagerstown, allegedly totaling $2,400; and the purported loss of $10,000 that plaintiff sustained in connection with the sale of his home, place the amount in controversy at $68,650.45. Defendants also concede that a security deposit for the Hagerstown apartment and the costs of moving must be added to that sum, Motion Memo at 11-12, and plaintiff insists he is also entitled to compensation for contributions made to the LLC prior to the cancellation of the contract,[18] as well as "numerous damages" he incurred in taking himself off the job market in reliance on CWC's representations.  Opposition at 9-10.  Although plaintiff has not attached sums to these additional claims for recovery, instead asserting that the sums "can be proved by economic witnesses on discovery," *id.* at 10, I cannot conclude, as defendants insist, "that [plaintiff's] claim never could have amounted to the sum necessary to give jurisdiction." Reply at 3 (quoting *St. Paul*, 303 U.S. at 290).  Moreover, in light of the fact that the dispute over the amount in controversy has arisen in the wake of the dismissal of plaintiff's Wage Act claim, it is within my discretion to retain jurisdiction over the case, even if it were apparent that the jurisdictional amount had not been satisfied.   I will not dismiss Count III because of any perceived deficiency in the amount in controversy.

### Conclusion

---

[17] Plaintiff's calculation, $56,250, must be relied on, due to the posture of the case.

[18] Presumably, plaintiff is referring to the training in Silver Spring and the time and money expended on the professional photos.

For the foregoing reasons, I will grant the motion to dismiss of defendants Capital Women's Care, LLC, Mitesh Kothari, David Solberg and Andrew Oh as to Count I; and I will dismiss Counts II and III as to the individual defendants.   As to CWC, I will deny the motion to dismiss with respect to Counts II and III.   A separate Order consistent with this Memorandum Opinion follows.

Date:<u>November 14, 2011</u>                      <u>                /s/                        </u>
                                                  Ellen Lipton Hollander
                                                  United States District Judge